Terri Lee **HALDERMAN**, et al.

v.

**PENNHURST STATE SCHOOL & HOSPITAL**, et al.

No. CIV. A. 74–1345.

United States District Court, E.D. Pennsylvania.

July 21, 1998.

David Ferleger, Philadelphia, PA, for plaintiffs.

Judith A. Gran, Public Interest Law Center of Philadelphia, Philadelphia, PA, for plaintiff-intervenors The ARC–PA (formerly the Pennyvania Association for Retarded Citizens), et al.

Robert H. Stern, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for plaintiff-intervenor U.S.

Jerome J. Shestack, Barry M. Klayman, Wolf, Block, Schorr and Solis–Cohen LLP, Philadelphia, PA, for defendant Com. of Pa.

Stephen C. Miller, Law Dept., Philadelphia, PA, for defendant County of Philadelphia.

### MEMORANDUM

BRODERICK, District Judge.

In 1977, after a thirty-two day trial, this Court held that the constitutional and statutory rights of the members of the *Pennhurst* class had been violated. In 1985, after several years on appeal, including three arguments before the United States Supreme Court, this Court approved a settlement agreement and entered it as a consent decree (the "1985 Decree"). The settlement was greeted throughout the nation as recognition that persons with mental retardation have the right to habilitation in the community.

In 1987, the plaintiffs filed a motion to hold two defendants, the Commonwealth of Pennsylvania ("Commonwealth") and County of Philadelphia ("Philadelphia"), in contempt for violating the 1985 Decree. Pursuant to a stipulation of the parties, the Court appointed a team of experts to review and analyze the level of habilitation being provided to Philadelphia members of the *Pennhurst* class. Unable to agree on a settlement, a contempt hearing commenced, and in March 1994, the Court held the Commonwealth and Philadelphia in contempt for deliberately violating their obligations under the 1985 Decree. The Court also appointed a Special Master, Mr. Tony Records, to oversee com-

---

pliance with the contempt order and the 1985 Decree.

Over the past four years, the Commonwealth and Philadelphia have developed numerous programs and plans to rectify their substantial non-compliance with the 1985 Decree. On February 9, 1998, the Court issued a Memorandum and Order reviewing the history of this case and expressing the Court's intention to conclude its active supervision over Philadelphia members of the *Pennhurst* class. *Halderman v. Pennhurst State School and Hospital*, 995 F.Supp. 534, 535–47 (E.D.Pa.1998). As a final precaution, however, the Court ordered the Special Master to conduct a comprehensive review of Philadelphia class members to determine whether they are receiving the habilitation, training, and care mandated by the 1985 Decree.

The Special Master's report, filed June 30, 1998, confirms the remarkable accomplishments which have been achieved since 1994. The Special Master's findings reveal that the defendants are now substantially fulfilling their obligations under the 1985 Decree and that their efforts are providing Philadelphia class members with the level of habilitation, care, and protection from harm required by the Decree. As the report states, "[t]here are few similarities between the support system which existed at the time the Contempt Order was issued and the one currently in existence." *Special Master's Report*, June 30, 1998, at 7–8. Accordingly, by Order dated today, the Court will: (1) adopt the Special Master's findings; (2) purge the Commonwealth and Philadelphia of all contempt found in 1994; and (3) end the Court's and the Special Master's active supervision over the Philadelphia members of the *Pennhurst* class.

There are, of course, some areas where the defendants need to make further efforts to comply with the 1985 Decree. The Special Master's findings reveal that the Commonwealth and Philadelphia have not achieved substantial compliance with respect to the following requirements of the 1985 Decree:

1. *Development of individual habilitation plans in accordance with professional standards*

Although every Philadelphia class member surveyed now has a current individual habilitation plan or individual support plan (IHP/ISP), about one-half of IHP/ISPs were not developed in accordance with professional standards. The Special Master found that many IHP/ISPs lack measurable objectives and adequate descriptions of the types of services that are to be provided. The plans also need to be updated more frequently when significant changes in the class member's life warrant. Finally, every member of the class member's interdisciplinary team must be present at the annual review meeting, and the IHP/ISP must identify the specific individuals responsible for implementing the plan's objectives. The defendants are aware of these problems and have provided the Special Master with an outline of additional steps which are being taken to ensure that IHP/ISPs are developed in accordance with professional standards. *See Special Master's Report*, June 30, 1998, at Appendix E. The Court is confident that the defendants are committed to achieving substantial compliance with this portion of the 1985 Decree without continued supervision by the Court and the Special Master.

2. *Provision of therapy, day program, vocational, and transportation services*

Compared to four years ago, class members now receive many more services and supports as part of the Decree's requirement that they be provided with minimally adequate habilitation. The vast majority of class members surveyed are receiving the required level of residential supports and other supports to enable them to participate in the community. However, the Special Master's findings indicate that further therapy, day program, vocational, and transportation services are needed to comply with the Decree's requirement of minimally adequate habilitation. The defendants have recognized these concerns and have outlined plans to address them. *See Special Master's Report*, June 30, 1998, at Appendix E. The Court shares the Special Master's confidence that the defendants are dedicated to achieving substantial compliance with respect to these portions of

the 1985 Decree, so that continued supervision by the Court and the Special Master is not necessary.

### 3. *Investigation of allegations of abuse and neglect*

Four years ago, the Court found that the Commonwealth of Pennsylvania and County of Philadelphia failed to actively investigate most incidents of abuse, neglect, death and injury of class members. In 1995, the defendants implemented a plan for investigating and resolving such incidents. The Special Master's recent review, however, uncovered several incidents of alleged abuse of class members by their housemates and/or co-workers which were not adequately investigated. Abuse of class members by fellow class members, housemates, or co-workers must be taken just as seriously as abuse of class members by professional staff. Fortunately, the defendants appear to realize this and have assured the Special Master that they will take action to ensure that all allegations of abuse, neglect, and injury are promptly reported and investigated. Accordingly, the Court believes that the defendants' commitment to achieving substantial compliance with this portion of the 1985 Decree obviates continued supervision by the Court and the Special Master.

### 4. *Provision of adequate dental services*

The defendants have made vast improvements in the provision of medical services. The Special Master reports that the "Comprehensive Health Care Plan for Pennhurst Class Members," adopted two years ago, is being timely and effectively implemented. However, the Special Master found that class members are not being provided with adequate dental services as required by the 1985 Decree. There are too few dentists available, lengthy delays in receiving services, and difficulty in finding dentists who will serve class members who require general anesthesia. The defendants are well aware of these problems and have outlined corrective actions currently underway. *See Special Master's Report,* June 30, 1998, at Appendix G. Accordingly, the Court believes that the defendants are committed to achieving substantial compliance with the Decree's requirement of providing adequate dental services, and further supervision by the Court and the Special Master is not necessary.

The defendants' efforts to comply with the 1985 Decree represent a total transformation from just four years ago. As the Special Master's report states:

> [T]here is a new attitude demonstrated by both the County and the Commonwealth with regard to their quality assurance roles. Unlike the system in existence at the time the Contempt Order was issued, the improved system has processes in place to identify problems and take corrective action, when necessary. In many cases, the defendants already were aware of the problems identified by the Special Master during the course of the review on both an individual class member and systemic level. As a result, for many of these issues, corrective action already was in the process of being implemented and/or was being planned.

*Special Master's Report,* June 30, 1998, at 8. The Special Master's findings reveal that implementation of the Philadelphia Quality Assurance Plan and other plans has, as the Court predicted three years ago, "replace[d] the need for continuing supervision by the Court and the Special Master," and provided "a happy conclusion to more than twenty years of litigation." *Halderman v. Pennhurst State School and Hospital,* 1995 WL 605479 (E.D.Pa. Oct.13, 1995); *Halderman v. Pennhurst State School and Hospital,* 1995 WL 232509 (E.D.Pa. April 18, 1995).

Accordingly, the Court will adopt the factual findings in the Special Master's Report. They are not disputed. The Court will also adopt the Special Master's first two recommendations: The Court will purge the Commonwealth of Pennsylvania and County of Philadelphia of all contempt with regard to the March 1994 contempt order. The Court will also order the Office of the Special Master to be closed by August 31, 1998. This extension, supported by the defendants, is necessary to enable the parties to wind up final business and to revise current programs and plans to eliminate oversight by the Court and the Special Master.

547

The Court, however, will not adopt the Special Master's final recommendation to conduct another review in two years to ensure that the defendants have taken corrective action in the few areas where they have not yet achieved substantial compliance with the 1985 Decree. As discussed above, the defendants have submitted plans to improve services in each one of these areas, and the Court will not interfere with the defendants' efforts so long as they continue to work in good faith to comply with the 1985 Decree.

The Commonwealth's and Philadelphia's dedication and determination to achieving substantial compliance with the 1985 Decree not only warrant their being purged of contempt, but also merit commendation from this Court. Nancy Thaler, the Commonwealth's deputy secretary for mental retardation; and Vicki Stillman–Toomey, the Commonwealth's southeast regional director for mental retardation, were most cooperative. On behalf of Philadelphia, Estelle Richman, the health commissioner; Susan Pingree; and Larry Pace were also most cooperative. Together with all counsel of record, these individuals have achieved dramatic improvements over the past four years and have established a system of programs and services which provide each Philadelphia class member with the opportunity to develop his or her potential pursuant to the 1985 Decree. The Court would also like to commend the Special Master, Tony Records, as well as his assistant Maria Laurence and the rest of the Special Master's staff, for guiding the parties toward cooperation and compromise. They have served the Court, the parties, and Philadelphia class members extraordinarily well.

The years of this litigation have vindicated the opinions of the mental retardation experts that institutionalization at Pennhurst was not providing adequate habilitation to its residents. Transferring persons with mental retardation from Pennhurst to the community has enabled them to develop their capabilities, enjoy a fuller life, and in some instances, become self-supporting members of the community. When the consent decree was approved in 1985, this Court optimistically declared: "The concluding chapter of this litigation is at hand." Today, the Court makes the same prediction and sincerely hopes that it will never again be necessary for the Court to find one of the defendants in contempt of the 1985 Decree.